UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| KERRY CIMBALO, | Plaintiff, |
| v. | Civil Action No. 3:21-cv-309-DJH |
| BASF CORPORATION, | Defendant. |

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Kerry Cimbalo alleges that Defendant BASF Corporation, her former employer, retaliated against her for her opposition to race, gender, and sexual-orientation discrimination. (Docket No. 5, PageID # 41–43) Cimbalo also asserts that BASF discriminated against her based on her gender. (*Id.*, PageID # 44) BASF moves to dismiss Cimbalo's amended complaint.[1] (D.N. 7-1) For the reasons explained below, the Court will deny BASF's motion.

**I.**

The Court "take[s] the facts only from the complaint, accepting them as true as [it] must do in reviewing a Rule 12(b)(6) motion." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 757 (6th Cir. 2020). BASF employed Cimbalo from October 2019 until her termination in March 2021. (D.N. 5, PageID # 40–41) As an employee, Cimbalo's responsibilities included "overseeing human resources and labor relations" for BASF's Quincy, Florida site. (*Id.*, PageID # 40) In July 2020, Cimbalo complained to her supervisor Fannie Milton that Daniel Dustin, a manager at the Quincy site, "was demonstrating racial, sexual orientation and gender hostility." (*Id.*) Specifically, Cimbalo told Milton that Dustin was

---

[1] BASF also moves to dismiss Cimbalo's original complaint. (D.N. 4) The Court will deny this motion as moot.

1

> Refusing to permit his subordinates at the site to observe a moment of silence for George Floyd; Saying that women at the site "didn't know what they were doing;" Laying off a disproportionate number of Black, female employees in a reduction of force move; Investigating Black, female employees when they were off duty; Expressing a refusal to fly a gay pride flag at the site; [and] Refusing to implement a diversity inclusion and infrastructure plan at the site.

(*Id.*)

Milton initially failed to address Cimbalo's complaints. (*Id.*) Consequently, Cimbalo "went outside her direct chain of command" and complained to the "corporate legal department" about Dustin's behavior. (*Id.*, PageID # 41) Milton then initiated an investigation into Cimbalo's allegations. (*Id.*) During the investigation, BASF terminated Cimbalo for "violating a company guideline." (*Id.*) Cimbalo concedes that she received a written warning prior to her termination but asserts that two "white male employees" at the "management level" also received warnings for "more serious violations" than Cimbalo's alleged violation. (*Id.*, PageID # 41, 44) Instead of terminating these two employees, BASF increased their pay. (*Id.*, PageID # 44)

Cimbalo initiated an action in state court in April 2021 (D.N. 1-1), which BASF removed to this Court. (D.N. 1) Cimbalo then filed an amended complaint, alleging retaliation and gender discrimination in violation of the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344 *et seq.* (D.N. 5) BASF now moves to dismiss Cimbalo's amended complaint. (D.N. 7-1)

**II.**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

**A.      Retaliation**

Cimbalo alleges that BASF retaliated against her, in violation of the KCRA, for refusing to take part in and opposing race, gender, and sexual-orientation discrimination. (D.N. 5, PageID # 41–43) The KCRA prohibits retaliation or discrimination against an employee because she "opposed a practice declared unlawful" by the KCRA or because she "has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under" the KCRA. Ky. Rev. Stat. § 344.280(1). Retaliation claims under the KCRA are evaluated under the same standard as Title VII claims. *See Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014) (citing *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009); *Brooks v. Lexington-Fayette Urb. Cnty. Hous. Auth.*, 132 S.W.3d 790, 801–02 (Ky. 2004)).

At the motion-to-dismiss stage, Cimbalo is not required to establish a prima facie case of retaliation. *See Crowder v. Railcrew Xpress*, 557 F. App'x 487, 492 (6th Cir. 2014) (quoting *Keys v. Humana, Inc.,* 684 F.3d 605, 609 (6th Cir. 2012)). Rather, Cimbalo's "amended complaint [must] contain[] 'sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference,'" *id.* at 493 (quoting *Keys*, 684 F.3d at 610), that BASF retaliated against her because she "opposed a practice declared unlawful" under

3

the KCRA. § 344.280(1). The parties contest whether Cimbalo meets this pleading standard. (*See* D.N. 7-1; D.N. 10) Specifically, BASF argues that Cimbalo fails to plausibly allege that she engaged in "protected activity." (D.N. 7-1, PageID # 53–55) BASF also contends that the KCRA does not prohibit discrimination based on sexual orientation. (*See id.*, PageID # 57)

### 1. Opposition Activity

Protected activities under the KCRA include complaining to the Equal Employment Opportunity Commission and opposing an apparent KCRA violation. *See Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989)); *Sullivan v. Paycor, Inc.*, No. 3:13-CV-00028-H, 2013 WL 2286069, at *4 (W.D. Ky. May 23, 2013). "[C]omplaining about allegedly unlawful conduct to company management is classic opposition activity." *Wasek*, 682 F.3d at 469 (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000)). Importantly, a retaliation claim requires only a "reasonable and good faith belief" that discrimination occurred—the plaintiff does not have to show that the underlying conduct was actually unlawful. *Asbury Univ. v. Powell*, 486 S.W.3d 246, 252 (Ky. 2016) (citing *Johnson*, 215 F.3d at 579–80 ("[A] violation of Title VII's retaliation provision can be found whether or not the challenged practice ultimately is found to be unlawful.")). BASF contends that Cimbalo did not engage in a protected activity because she neither took "additional step[s]" outside of her job to oppose discrimination nor had a "reasonable belief that unlawful discriminatory behavior had actually occurred." (D.N. 7-1, PageID # 54; D.N. 11, PageID # 86)

BASF first argues that Cimbalo's complaints, without any additional opposition activity, were not protected because her job duties included reporting any employee complaint to her supervisor. (*See* D.N. 7-1, PageID # 54) But the Sixth Circuit has rejected the argument that a

4

human-resources officer like Cimbalo must "go[] beyond" her regular job duties to be entitled to protection under Title VII. *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 345–46 (6th Cir. 2021) (citing *Johnson*, 215 F.3d at 579–80); *see also Trujillo v. Henniges Auto. Sealing Sys. N. Am., Inc.*, 495 F. App'x 651, 655 (6th Cir. 2012) ("We have repeatedly held that complaints to human resources personnel regarding potential violations of Title VII constitute protected activity for purposes of establishing a prima facie case of retaliation."). In *Jackson*, the court cautioned against finding retaliation claims deficient on the ground that the plaintiffs' complaints, which would otherwise constitute protected activity, "related to their job responsibilities." 999 F.3d at 345 (citing *Johnson*, 215 F.3d at 580). The court noted that this additional requirement would "create perverse incentives for employers and leave the employees specifically hired to do the often difficult work of combating discrimination with fewer protections than general employees." *Id.* at 345–46 (citing *Johnson*, 215 F.3d at 580).

BASF next attempts to distinguish Sixth Circuit precedent by arguing that Cimbalo failed to assert in her amended complaint that she had "a reasonable belief" that she "was actually opposing unlawful discrimination." (D.N. 11, PageID # 86) At this stage, however, it is inappropriate for the Court to determine whether Cimbalo's belief about Dustin's conduct was "reasonable." *See Crawford v. Kohl's Inc.*, No. CV 5:21-119-DCR, 2021 WL 4189617, at *3 (E.D. Ky. Sept. 14, 2021) (noting that whether a plaintiff can "satisfy the reasonable, good-faith belief standard" is "necessarily fact-dependent and typically . . . not resolved through a motion on the pleadings" (citing *Asbury Univ.*, 486 S.W.3d at 252)); *Wimberly v. Transcraft*, No. 5:19-CV-180-TBR, 2020 WL 3513244, at *4–5 (W.D. Ky. June 29, 2020) (refusing to dismiss plaintiff's retaliation claim under 12(b)(6) when he asserted that he was terminated for opposing alleged sexual harassment by his superior and finding that "a reasonable person in [the plaintiff's] position

5

could conclude that [his superior's] behavior was unlawful"). Accordingly, BASF's argument fails. *See Jackson*, 999 F.3d at 345–46; *Rhodes v. R&L Carriers, Inc.*, 491 F. App'x 579, 580–84 (6th Cir. 2012) (holding that plaintiff, a human-resources officer, plausibly alleged retaliation when he claimed that his employer engaged in discrimination, including refusing to hire women in certain positions; that he complained to company executives and corporate counsel about such practices; and that his employer later terminated him).

### 2. Protected Group

BASF argues that Cimbalo fails to allege that she engaged in "vigorous" advocacy on behalf of a protected group, which it asserts is required to state a retaliation claim. (D.N. 7-1, PageID # 55–57) But "vigorous" advocacy is not required to maintain a claim under the KCRA. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009) (citing *Johnson*, 215 F.3d at 575); *cf. Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 277 (2009) (holding that "opposition" under Title VII does not require "'active, consistent' behavior"). Moreover, while the KCRA, as well as Title VII, prohibits discrimination against an employee for associating with or advocating for a protected group, Ky. Rev. Stat. § 344.040(1)(a); *Johnson*, 215 F.3d at 573–74, Cimbalo's retaliation claim is based not on advocacy or association, but rather on her "opposition" to alleged unlawful discrimination. (*See* D.N. 5, PageID # 40–44) As previously discussed, protected opposition activities "include 'complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices.'" *Jackson*, 999 F.3d at 344–45 (quoting *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008)). Cimbalo asserts that she complained to her supervisor, and then to the corporate legal department, that Dustin engaged in a variety of discriminatory behaviors towards protected groups, including "Black, female employees." (D.N. 5, PageID # 40–41) Cimbalo therefore has sufficiently alleged that she

opposed unlawful discrimination. *See* §§ 344.040(1)(a), 344.280(1); *Jackson*, 999 F.3d at 345 (citing *Crawford*, 555 U.S. at 276 ("When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity.")).

### 3. Discrimination Based on Sexual Orientation

BASF contends that "the KCRA does not prohibit discrimination based on sexual orientation" and that Cimbalo's retaliation claim for opposing discrimination based on sexual orientation must therefore fail. (D.N. 7-1, PageID # 57) Both the KCRA and Title VII prohibit discrimination on the basis of "sex," and neither statute explicitly mentions sexual orientation. 42 U.S.C. § 2000e-2; Ky. Rev. Stat. § 344.040(1)(a). In *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), however, the Supreme Court held that discrimination based on "sex" under Title VII includes discrimination based on sexual orientation. The issue here is whether the KCRA prohibition on "sex" discrimination also includes discrimination based on sexual orientation. *See* § 344.040(1)(a).

BASF, citing *Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722, 727 (6th Cir. 2009), argues that the Sixth Circuit has determined that the KCRA does not protect against discrimination based on sexual orientation. (D.N. 7-1, PageID # 57) But in *Pedreira*, the plaintiff did not argue that the KCRA prohibited discrimination based on sexual orientation. *See* 579 F.3d at 727. Rather, the plaintiff alleged that she was terminated because "she [did] not hold [her former employer's] religious belief that homosexuality is sinful." *Id.* at 727–28. Moreover, when the Sixth Circuit decided *Pedreira*, it had firmly established that Title VII did not prohibit discrimination based on sexual orientation—a finding overruled by *Bostock*, 140 S. Ct. 1731. *See Pedreira*, 579 F.3d at 727 (citing *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006)

7

(holding that Title VII does not prohibit discrimination based on sexual orientation)). District courts have cited *Pedreira*, 579 F.3d 722, to find that the KCRA does not protect individuals from sexual-orientation discrimination, but they did so before the Supreme Court decided *Bostock*, 140 S. Ct. 1731, and often also relied on a finding that Title VII did not prohibit such discrimination. *See, e.g.*, *Settles v. MSSC U.S., Inc.*, No. 5:17-CV-00129-TBR, 2018 WL 3745829, at *3 (W.D. Ky. Aug. 7, 2018) (dismissing plaintiff's KCRA sexual-orientation discrimination claim because "the Sixth Circuit expressly held that 'sexual orientation is not a prohibited basis for discriminatory acts under Title VII'" (quoting *Vickers*, 453 F.3d at 762)); *Lindsey v. Mgmt. & Training Corp.*, No. 4:17-CV-00146-JHM, 2018 WL 2943454, at *2 (W.D. Ky. June 12, 2018) (relying on the Sixth Circuit's application of "Title VII precedent to the KCRA" to determine that "sexual orientation is not a prohibited basis for discriminatory acts" under either law (citing *Vickers*, 453 F.3d at 762; *Pedreira*, 579 F.3d at 727)); *Wimsatt v. Kroger Co.*, No. 3:14-CV-712-CRS, 2015 WL 3622336, at *4 (W.D. Ky. June 9, 2015) ("[D]iscrimination on the basis of sexual orientation is, simply put, a claim that is not cognizable under the KCRA." (citing *Pedreira*, 579 F.3d at 727)). Accordingly, *Pedreira* is inapposite here. *See* 579 F.3d at 727.

The Court must therefore apply Kentucky law to determine whether the KCRA protects individuals from discrimination based on sexual orientation. *See Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012) (citing *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008)) (noting that federal courts sitting in diversity jurisdiction must apply the substantive law of the forum state). This requires the Court to "anticipate how [Kentucky's] highest court would rule" on the issue. *Id.* at 607–08 (quoting *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005)) (internal quotation marks omitted). But neither party cites, nor is the Court aware of, a Kentucky Supreme Court or Kentucky Court of Appeals decision that has addressed whether the

8

KCRA prohibits discrimination based on sexual orientation. (*See* D.N. 7-1; D.N. 10; D.N. 11) Consequently, the Court "must predict" how the Kentucky Supreme Court would rule. *Berrington*, 696 F.3d at 608. In doing so, it heeds the Sixth Circuit's admonition to "be 'extremely cautious about adopting "substantive innovation" in state law.'" *Id.* (quoting *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004)).

As previously discussed, the KCRA is "interpreted consonant with" Title VII. *Hamilton*, 556 F.3d at 434 (quoting *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 793 (6th Cir. 2000)) (internal quotation marks omitted). This is because the purpose of the KCRA is, in part, "[t]o provide for execution within the state of the policies embodied in . . . Title VII." § 344.020(1)(a). Additionally, "[t]he language of the KCRA generally tracks the language of Title VII." *Hamilton*, 556 F.3d at 434 (alteration in original) (quoting *Morris*, 201 F.3d at 793) (internal quotation marks omitted); *see Stewart v. Univ. of Louisville*, 65 S.W.3d 536, 539 (Ky. Ct. App. 2001) (noting that the KCRA "was modeled after Title VII" and is "virtually identical to Title VII"). Due to these similarities, "Kentucky courts generally follow federal law in interpretating the [KCRA]." *Stewart*, 65 S.W.3d at 539.

The Supreme Court's decision in *Bostock*, 140 S. Ct. 1731, and Kentucky courts' reliance on federal law when interpreting the KCRA support a finding at this stage in the litigation that the KCRA protects individuals from discrimination based on sexual orientation. *See Hamilton*, 556 F.3d at 434. "[F]ederal 'decisions regarding [Title VII] are most persuasive, if not controlling, in interpreting the [KCRA].'" *Roof v. Bel Brands USA, Inc.*, 641 F. App'x 492, 496 (6th Cir. 2016) (quoting *White v. Rainbo Baking Co.*, 765 S.W.2d 26, 28 (Ky. Ct. App. 1988)). Absent a state-court decision to the contrary and assuming the Kentucky Supreme Court continues its longstanding practice of interpreting the KCRA "consonant with" Title VII, *Hamilton*, 556 F.3d

at 434, the Court anticipates that the KCRA's prohibition on "sex" discrimination would be found to include discrimination on the basis of sexual orientation. *See* § 344.040(1)(a); *Asbury Univ.*, 486 S.W.3d at 253 (recognizing the "well-accepted notion" that the Kentucky Supreme Court "tends to follow federal interpretations of Title VII" when "interpreting the KCRA" (citing *Brooks*, 132 S.W.3d at 802)); *Stewart*, 65 S.W.3d at 539 (noting that the KCRA is "virtually identical to Title VII" and thus "Kentucky courts generally follow federal law in interpreting the [KCRA]"). The Court therefore will not dismiss Cimbalo's retaliation claim on this ground.

In sum, Cimbalo has plausibly alleged that BASF retaliated against her in violation of the KCRA. *See Rhodes*, 491 F. App'x at 584 (reversing the district court's dismissal of plaintiff's Title VII retaliation claim when plaintiff alleged that he opposed his employer's "unlawful actions" and was then terminated "mere months after expressing his opposition"); *Downs v. United States Postal Serv.*, No. 3:19-CV-00057-RGJ, 2019 WL 3947921, at *5–6 (W.D. Ky. Aug. 21, 2019) (denying defendant's motion to dismiss when plaintiff alleged that he filed multiple Equal Employment Opportunity complaints and was later expelled from a training program); *Percell v. Ky. Dep't of Mil. Affs.*, No. 3:16-CV-721-TBR-LLK, 2017 WL 6347973, at *4 (W.D. Ky. Dec. 12, 2017) (denying defendant's motion to dismiss when plaintiff alleged she was terminated after complaining to an Equal Employment Officer that defendant, her employer, engaged in discrimination). BASF's motion will therefore be denied as to Cimbalo's retaliation claims.

**B.     Gender Discrimination**

Cimbalo also contends that BASF discriminated against her based on her gender, in violation of the KCRA, § 344.040(1)(a). (D.N. 5, PageID # 44) Specifically, Cimbalo asserts that before her termination, she and two "management-level" white, male employees received written warnings and that the male employees' warnings were for "more serious" violations than hers.

(*Id.*) She further contends that the male employees then received a pay raise, while she was terminated. (*Id.*) Like retaliation claims, gender-discrimination claims under the KCRA are evaluated under the same standard as Title VII claims. *See Roof*, 641 F. App'x at 497 (citing *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000)); *Bd. of Regents of N. Ky. Univ. v. Weickgenannt*, 485 S.W.3d 299, 306 (Ky. 2016).

Cimbalo "is not required to plead all elements of a prima facie case of discrimination in order to survive a motion to dismiss." *Roof*, 641 F. App'x at 497 (citing *Keys,* 684 F.3d at 609–10). Rather, she must "satisfy the plausibility standard" laid out in *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 555. *Roof*, 641 F. App'x at 497. Cimbalo therefore "must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference,'" *Keys*, 684 F.3d at 610 (quoting *Iqbal*, 556 U.S. 678–79), that BASF discriminated against her "with respect to [her] compensation, terms, conditions, or privileges of employment" because of her gender. § 344.04(1)(a); *see Keys*, 684 F.3d at 610.

BASF moves to dismiss Cimbalo's discrimination claim, arguing that she fails to meet this pleading standard because she does not sufficiently allege that she was "treated differently than similarly situated male employees." (D.N. 7-1, PageID # 58) BASF points to Cimbalo's contention that two male employees received an increase in pay after they received warnings for a "more serious" violation than Cimbalo's, rather than for the "same" violation. (*Id.*; *see* D.N. 5, PageID # 44) In support of its argument, BASF cites *Han v. University of Dayton*, 541 F. App'x 622, 626–27 (6th Cir. 2013). (D.N. 7-1, PageID # 59–60)

The plaintiff's allegations in *Han*, however, were not as detailed as Cimbalo's allegations. *See* 541 F. App'x at 625. In *Han*, the plaintiff, a tenure-track Asian-American professor, claimed that he was given a negative evaluation and ultimately terminated based on his race, despite

11

positive reviews from peers and students. *Id.* He further alleged that a white adjunct professor was hired to teach one of the plaintiff's classes after the plaintiff's termination. *Id.* The Sixth Circuit found that he failed to state a race-discrimination claim because "hiring an adjunct professor to teach one class is not a replacement hire for a tenure-track professor teaching several classes." *Id.* at 627. Moreover, the plaintiff failed to allege with specificity that any negative evaluation from the tenure committee was because of his race. *Id.*

Cimbalo, in contrast, meets the pleading standard for her gender-discrimination claim. *See Roof*, 641 F. App'x at 497. Cimbalo alleges that two "management-level" male employees were given pay raises "around the same time" as her termination, even though they received warnings for "more serious" violations than she did. (D.N. 5, PageID # 41, 44) These allegations, at the motion-to-dismiss stage, are sufficient to assert a gender-discrimination claim. *See Roof*, 641 F. App'x at 498 (affirming denial of defendant's motion to dismiss when plaintiff alleged that "a male was promoted in her place, whom [the plaintiff] then trained on how to perform some crucial aspects of the job"); *Dillworth v. Wormuth*, No. 3:20-CV-629-CHB, 2021 WL 5749097, at *13 (W.D. Ky. Dec. 2, 2021) (denying defendant's motion to dismiss when male plaintiff alleged that he received negative performance reviews for making certain mistakes in his job duties, while female employees who made similar mistakes received training opportunities); *Carson v. Little Clinic Mgmt. Servs. LLC*, No. 3:19-CV-682-DJH, 2020 WL 2748501, at *2–3 (W.D. Ky. Feb. 12, 2020) (refusing to dismiss plaintiff's race- and sex-discrimination claims when plaintiff, a Black male, alleged he was treated differently than white, female employees and was terminated and replaced by a female); *cf. Poursaid v. Norton Brownsboro Hosp.*, No. 3:18-CV-720-DJH, 2019 WL 4655908, at *4 (W.D. Ky. Sept. 24, 2019) (dismissing plaintiff's gender-discrimination claim

when she alleged only that she was fired because patient families complained about her ability to do her job safely). BASF's motion therefore will be denied.

### III.

Cimbalo has sufficiently alleged that BASF retaliated and discriminated against her in violation of the KCRA. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    BASF's motion to dismiss Cimbalo's amended complaint (D.N. 7) is **DENIED**.

(2)    BASF's initial motion to dismiss (D.N. 4) is **DENIED** as moot.

(3)    Pursuant to 28 U.S.C. § 636(b)(1)(A), this matter is hereby **REFERRED** to U.S. Magistrate Judge Regina S. Edwards for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues. Judge Edwards is further authorized to conduct a settlement conference in this matter at any time.